IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| WESLEY M. GROSE, | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | Civil Action No. 5:09-0305 |
| | ) | Criminal Action No. 5:05-0261 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside

or Correct Sentence by a Person in Federal Custody.[1] (Document Nos. 109 and 119.) By Standing

Order, this matter was referred to the undersigned United States Magistrate Judge for submission

of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. §

636(b)(1)(B). (Document No. 111.)

## FACTUAL BACKGROUND

By Indictment filed on December 28, 2005, Movant was charged with three counts of

knowingly and intentionally distributing a quantity of oxycodone, a Schedule II controlled

substance, in violation of 21 U.S.C. § 841(a)(1) (Counts 1, 3, and 5); two counts of knowingly and

intentionally distributing a quantity of alprazolam, a Schedule IV controlled substance, in violation

of 21 U.S.C. § 841(a)(1) (Counts 2 and 4); one count of knowingly and intentionally possessing with

intent to distribute a quantity of oxycodone, a Schedule II controlled substance, in violation of 21

U.S.C. § 841(a)(1) (Count 6); and one count of knowingly and intentionally possessing with intent

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to
a less stringent standard than if they were prepared by a lawyer, and therefore they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

to distribute a quantity of alprazolem, a Schedule IV controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 7). (Criminal Action No. 5:05-0261, Document No. 1.) On May 9, 2006, Movant pled guilty to Count One of the Indictment charging him with knowingly and intentionally distributing a quantity of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Id., Document No. 25 and 28.) A Presentence Investigation Report was prepared. (Id., Document No. 80.) The District Court determined that Movant had a Base Offense Level of 24, and a Total Offense Level of 28, the Court having applied a two-level enhancement pursuant to U.S.S.G. § 2D1.1, for possession of a dangerous weapon, and a two-level enhancement for obstruction of justice. (Id., Document No. 76.) The District Court ordered that Movant serve a 78-month term of incarceration to be followed by a three-year term of supervised release. (Id., Document Nos. 77, 82 and 83.)

Movant filed a Notice of Appeal on January 18, 2007. (Id., Document No. 84.) In his appeal, Movant argued that the District Court erred by (1) applying a two-level enhancement for possession of a deadly weapon during the offense pursuant to U.S.S.G. § 2D1.1(b)(1); (2) denying Movant an adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; (3) finding that Movant did not qualify for a reduction under the safety valve provisions of U.S.S.G. §§ 2D1.1(b)(9) and 5C1.2; and (4) imposing an unreasonable sentence. On November 15, 2007, the Fourth Circuit Court of Appeals affirmed Movant's sentence. United States v. Grose, 254 Fed.Appx. 190 (4th Cir. 2007). Movant filed a petition for certiorari in the United States Supreme Court, which was denied on March 24, 2008. Grose v. United States, 552 U.S. 1289, 128 S.Ct. 1725, 170 L.Ed.2d 529 (2008).

On March 26, 2009,[2] Movant filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set

---

[2]  Although Movant's Section 2255 Motion was received and filed by the Clerk on March 26, 2009, Movant's Section 2255 Motion was dated March 19, 2009. The "prison mailbox rule" as

Aside, or Correct Sentence by a Person in Federal Custody. (Civil No. 5:09-0305, Document No. 109.) As grounds for *habeas* relief, Movant alleges as follows: (1) Trial counsel acted ineffectively by (a) failing to seek the suppression of Movant's confession and (b) failing to challenge Movant's competency to plead guilty; (2) The District Court's determination of drug quantity was "clearly erroneous;" and (3) The District Court erred in failing to suppress evidence seized during the unlawful search of Movant's "premises." (Id., pp. 4 - 5.) Movant, therefore, contends that his Section 2255 Motion should be granted. As an Exhibit, Movant attaches a copy of a Mental Hygiene Clinic Note from Dr. Ali A. Amir. (Document No. 109-1.)

On December 2, 2009, Movant filed his Motion for Leave to Amend and Amended Section 2255 Motion (Id., Document No. 119.) In support of his Motion, Movant requests that his Section 2255 Motion be amended to include the following grounds: (1) Trial "counsel failed to effectively perform and assist Mr. Grose in order to dispute the obstruction and firearm enhancements and downward departure issues in regards to purportedly Mr. Gross was known to carry firearms, make threats and/or intimidate government informants" (Id., pp. 3 and 5 - 7.); (2) Trial "counsel failed to move the Court for a competency hearing and/or argue at Mr. Grose's sentencing hearing concerning Mr. Grose's mental problems for the past 30 years"[3] (Id., pp. 3 - 4.); (3) Trial counsel failed to file a motion to suppress concerning (a) Movant's confession, (b) the informants' false statements, and (c) the evidence seized during the unlawful search of Movant's residence (Id., pp. 7 - 8.); (4) Trial

---

announced in *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988), requires the Court to consider an inmate's submission as filed when he delivers it to prison officials for mailing. *See Lewis v. Richmond City Police Department*, 947 F.2d 733, 735-36 (4th Cir. 1991). Therefore, the Court will consider Movant's Motion as timely.

[3]  The transcripts of the Sentencing Hearing reveals that trial counsel clearly informed the District Court of Movant's mental and medical problems. Trial counsel presented a letter from Dr. Alim Amir as an Exhibit. (Criminal Action 5:05-0261, Document No. 93-4, pp. 16 - 17.)

counsel failed to allege prosecutorial misconduct based upon the Government's presentment of allegedly false testimony (Id., pp. 8 - 10.); and (5) Appellate counsel acted ineffective in failing "to present issues of prosecutorial misconduct as well as informant false statements and perjury on appeal" (Id., p. 10.) Movant, therefore, requests an "Order of dismissal of the Indictment." (Id., p. 11.) By separate Order entered this day, the undersigned has granted Movant's Motion to Amend.

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

## 1.    Procedurally Barred Claims:

The filing of a Section 2255 motion does not supplant or obviate the need to file a direct appeal. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). The United States Supreme Court explains that "a final judgment commands respect. For this reason, we have long and

consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). A non-constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion. Stone v. Powell, 428 U.S. 465, 478 n. 10 (1976). A constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion unless the movant can show either (1) "cause and actual prejudice resulting from the errors of which he complains," or (2) "he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. Actual prejudice is shown by demonstrating that the error worked to movant's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The movant must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Furthermore, a movant may not reassert a claim decided on direct review. In Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the

Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." An exception exists, however, when there has been an intervening change in the law which justifies consideration of a prior determination. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974).

Movant argues that the District Court erred in failing to suppress evidence seized during the unlawful search of Movant's residence[4] and in its determination of drug quantity[5]. (Civil Action No. 5:09-305, Document No. 109, pp. 4 - 5.) The above alleged errors were not raised on appeal. Further, Movant has not shown and cannot show good cause for failing to do so and that prejudice has resulted. The Court, therefore, finds that the above errors are procedurally barred.

**2.      Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the

---

[4]  The Court notes that Movant's guilty plea constituted a waiver of all claims relating to nonjurisdictional errors that occurred prior to his plea, including claims relating to alleged constitutional deprivations. *See Tollet v. Henderson*, 411 U.S. 258, 266 - 67, 93 S.Ct. 1602, 1607 - 08, 36 L.Ed.2d 235 (1973)

[5]  The undersigned notes that the Government and Movant stipulated to the drug quantity (12 grams of Oxycodone). Prior to accepting the stipulation, the District Court heard extensive arguments from trial counsel and the Government supporting the stipulation. (Document No. 93, pp. 4 - 20 and Document No. 93-1, pp. 1 - 8.)

representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's

7

performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

> **A.      *Trial Counsel's Failure to Challenge the Plea*.**

Movant alleges that his plea was made unknowingly and involuntarily. Movant explains that his plea was invalid because he was incompetent to plead guilty. Movant, therefore, contends that trial counsel was ineffective in failing to challenge his competency to plead guilty. (Civil Action 5:09-0305, Document No. 109, pp. 4 - 5 and Document No. 119, pp. 3 - 4.)

A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant."North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea." See Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973); Manley v. United States, 588 F.2d 79, 81 (4th Cir. 1978). A defendant's statement that his plea is voluntary and knowingly is generally considered conclusive on the issue. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996); also see Fields v. Attorney General of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992)("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."), cert. denied, 506 U.S. 885, 113 S.Ct. 243, 121 L.Ed.2d. 176 (1992); United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991)(A defendant's statements at the plea hearing are strong evidence of the voluntariness of the plea agreement), cert. denied, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d. 412 (1992). The Fourth Circuit has recognized that "[i]n the absence of extraordinary circumstances, the

truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - 'permit[ting] quick disposition of baseless collateral attacks." United States v. LeMaster, 403 F.3d 216, 220 (4th Cir. 2005).

The record in this case reflects that Movant's guilty plea was voluntary and made with full knowledge of its consequences. During Movant's May 8, 2006, plea hearing, the District Court specifically inquired regarding Movant's mental capacity. (Criminal Action No. 5:05-0261, Document No. 92, pp. 4 - 6.) Trial counsel advised the Court that Movant was "on about 10 different medicines" and provided the Court with a list of all medications. (Id., p. 4.) Trial counsel also informed the Court of the name and reason for taking each medication. (Id.) Following trial counsel's representation concerning the medications, the District Court inquired as follows:

> THE COURT: Okay. Mr. Grose, is that your understanding of the medications that you are currently taking and the purposes for each one?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Are you suffering from any side effects of any of those medications as you sit her today?
>
> THE DEFENDANT: No sir, not that I know of.
>
> THE COURT: Are you having - - experiencing any effects from those medications as you sit her today that would impair your ability to participate in this hearing?
>
> THE DEFENDANT: No sir, I don't think so.
>
> THE COURT: Have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?
>
> THE DEFENDANT: No sir. Mental illness I have, yes, sir.

9

THE COURT:            Okay. Can you briefly describe that to me? Who - - I know that Mr. Bungard mentioned some of your medicines might be related to depression. Is there a physician that you have seen for those conditions?

THE DEFENDANT: Yes, sir. Dr. Amir at the VA Hospital.

THE COURT:            Anybody else that you have seen for mental health issues or drug addiction treatment?

THE DEFENDANT: No, sir.

THE COURT:            Do you know where you are and why you're here today?

THE DEFENDANT: Yes, sir.

THE COURT:            Do you have a hearing impairment or other disability that would prevent you from participating fully in this hearing today?

THE DEFENDANT: I have a hearing impairment, but I understand what you're saying.

THE COURT:            Can you hear me okay?

THE DEFENDANT: Yes, sir.

THE COURT:            All right. If at any time you are unable to hear me, please let me know, and I will speak up. I want to make sure that you are able to hear and understand - -

THE DEFENDANT: Yes, sir.

THE COURT:            - - please.

                             Mr. Bungard, do you have any reason to question the competence of your client for the purposes of today's hearing?

MR. BUNGARD:     No, Your Honor.

(Id., pp. 5 - 6.) The District Court then advised Movant of his constitutional rights and Movant affirmed that he understood he was giving up those rights by entering a plea of guilty. (Id., pp. 16 -

10

18.) The District Court required the Government to summarize the terms of the plea agreement and Movant acknowledged that he understood and agreed with the terms of the plea agreement as described and summarized by the Government. (Id., pp. 6 - 10.) The District Court informed Movant of the maximum sentence to which he was subject, elicited Movant's statement that he knew that his sentence was in the Court's discretion and found that Movant's plea was voluntary. (Id., pp. 12 - 15.) Movant further acknowledged that he was satisfied with defense counsel representation.[6] (Id., p. 22.) Based on the foregoing, the undersigned finds that Movant's plea was entered into knowingly and voluntarily. Therefore, Movant's claim that trial counsel acted ineffectively in failing to challenge Movant's competency to plead guilty is without merit.

**B.**      ***Trial Counsel's Failure to File a Motion to Suppress.***

Once a defendant pleads guilty, he cannot raise independent claims of deprivation of constitutional rights which occurred prior to the entry of the guilty plea including claims of unlawful search and seizure based on the Fourth Amendment. Tollet v. Henderson, 411 U.S. 258, 266 - 67, 93 S.Ct. 1602, 1607 - 08, 36 L.Ed.2d 235 (1973)(A guilty plea amounts to the waiver of the right to assert any constitutional or other non-jurisdictional issues which might appear prior to the admission of guilt.); also see McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22

---

[6] The District Court inquired as follows (Document No. 92, p. 22.):

| | |
|---|---|
| THE COURT: | Do you believe your attorney has adequately represented you in this case? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has you attorney left anything undone which you think should have been done? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Have you or your attorney found any defense to the charges contained in the indictment? |
| THE DEFENDANT: | Any defense? No, sir. |

11

L.E.2d. 418 (1969)(Generally, a guilty plea acts as a complete admission of the material elements of the crime which is charged and therefore constitutes an admission of factual guilt.). Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). As state above, the undersigned finds that Movant's guilty plea was counseled and voluntary. Movant's guilty plea therefore constitutes a waiver of his right to contend that his trial attorney's representation was constitutionally deficient with respect to matters constitutional and other non-jurisdictional matters which might have been raised prior to his entry of his guilty plea. Accordingly, Movant's claim that trial counsel was ineffective in failing to file a motion to suppress concerning Movant's confession, the informants' false statements, and the evidence seized during the unlawful search of Movant's residence (Civil No. 5:09-0305, Document No. 109, pp. 4 - 5 and Document No. 119, pp. 7 - 8.), are without merit.

### C.    *Trial Counsel's Failure to Challenge Firearm Enhancements.*

Movant argues that trial "counsel failed to effectively perform and assist Mr. Grose in order to dispute the . . . firearms enhancement and downward departure issues in regards to purportedly Mr. Grose was known to carry firearms." (Civil No. 5:09-0305, Document No. 119, pp. 3 and 5 - 7.) Movant contends that trial counsel failed to adequately challenge the credibility of Mr. Lilly. (Id., p. 5.) Movant further states that trial counsel "did not try and dispute that Mr. Grose was purportedly known to carry on him several or one firearm or that this alleged fact was intimidating." (Id.)

Based upon a review of the record, the undersigned finds that trial counsel was not ineffective in failing challenge the credibility of the Government's witnesses concerning Movant's firearm enhancement. In support of the firearm enhancement, the Government presented the

testimony of James Floyd Lilly, William Gibson, and John Dunn. Mr. Lilly testified that he obtained drugs from Movant for approximately two and half years. (Criminal Action No. 5:05-0261, Document No. 93-1, pp. 14 - 16.) Mr. Lilly testified that Movant stated that he had "plenty of guns," showed him a pistol, and occasionally carried a firearm in his truck. (Id., pp. 16 - 18.) Trial counsel thoroughly crossed examined Mr. Lilly concerning Movant's alleged possession of firearms. (Id., pp. 19 - 20.) Mr. Lilly admitted that when he purchased pills from Movant, Movant often brought the pills outside to Mr. Lilly's car and he never saw Movant with a gun in his possession in this context. (Id., p. 20.) Mr. Lilly acknowledged that he only saw Movant possess one firearm, which was the pistol that was allegedly "one of a kind." (Id., Document No. 93-1, p. 20 and Document No. 93-2, p. 1.) Mr. Lilly further admitted that Movant did not show him the pistol in connection with the selling of pills. (Id., Document No. 93-2, p. 1.) In an effort to challenge the credibility of Mr. Lilly, trial counsel presented Rose Fisher as a witness. (Document No. 93-3, pp. 6 - 7.) Ms. Fisher explained that Wesley Lilly, Mr. Lilly's son, burglarized her home on August 4, 2005. (Id., p. 8.) Ms. Fisher testified that Mr. Lilly visited her home and stated that "I'll give you fifteen hundred dollars if you don't press charges against my son." (Id., pp. 9 and 11.)

Mr. William Gibson testified that he purchased Oxycodone from Movant on five to ten occasions. (Id., Document No. 93-2, p. 7.) Mr. Gibson explained that some of the purchases took place inside Movant's house, but he never saw firearms inside the house. (Id., pp. 7 - 8.) Mr. Gibson further stated that he never saw Movant in possession of a firearm during the "buys." (Id.) During cross examination, trial counsel pointed out that Mr. Gibson testified before the grand jury that he purchased drugs from Movant on only two occasions. (Id., p. 11.)

Deputy John Dunn, Raleigh County Sheriff's Department, testified that he participated in the search of Movant's residence. (Id., p. 13.) Deputy Dunn stated that four bottles of prescription

13

drugs were found in the master bedroom in a dresser drawer. (<u>Id.</u>) Deputy Dunn testified that firearms were found "in the closet in the bedroom where the four bottles of pills were found." (<u>Id.</u>, p. 14.) Deputy Dunn explained that the closet containing the firearms was three to five feet from the dresser where the pills were found. (<u>Id.</u>, p. 15.) Deputy Dunn stated that approximately forty to fifty firearms were discovered in Movant's residence. (<u>Id.</u>, p. 15.) Deputy Dunn described the firearms as follows: "[T]ypical hunting guns, shotguns, rifles, just typical type of gun that you would use. I didn't notice anything special about them that would make them collector items." (<u>Id.</u>, p. 16.) On cross examination, Deputy Dunn stated that Movant had "quite a few older guns" and there were "two, maybe three, that I consider antiques." (<u>Id.</u>, Document No. 93-3, pp. 2 - 3.) Deputy Dunn acknowledged that there was no handgun or ammunition in the dresser where the pills were located. (<u>Id.</u>, pp. 4 - 5.) Deputy Dunn further admitted that Movant did not possess a firearm during any of the three controlled purchases of OxyContin. (<u>Id.</u>, p. 5.)

Based upon the foregoing, the undersigned concludes that counsel adequately challenged the credibility of the Government's witnesses and argued that there was no credible evidence that Movant possessed firearms in connection with an illegal drug activity. Trial counsel stressed that there was no testimony that Movant possessed a firearm when selling drugs, the firearms were not in the same location as the drugs, there was no evidence that any of the firearms were loaded, and Movant's firearms were either collectibles or hunting rifles. (Criminal Action No. 5:05-0261, Document No. 93-3, pp. 15 - 18.) Although the District Court applied the firearm enhancement, there is no evidence that trial counsel acted unreasonably in challenging the application of the firearm enhancement or in challenging the credibility of the Government's witnesses. Therefore, the undersigned finds that counsel's representation did not fall below an objective standard of reasonableness.

**D.** *Trial Counsel's Failure to Challenge Obstruction of Justice Enhancement.*

Movant alleges that "counsel failed to effectively perform and assist Mr. Grose in order to dispute the obstruction" enhancement. (Civil No. 5:09-0305, Document No. 119, pp. 3 and 5 - 7.) Movant alleges that trial counsel "was informed that Informant Floyd Lilly falsely stated that Mr. Grose came to his house to draft a letter of receipt for the $100,000 check." (Id., p. 3.)

According to the Presentence Report, Movant received an adjustment for obstruction of justice based upon a letter dated August 8, 2005, signed by Sharon Lilly, James Lilly, and Wesley Lilly. The letter dated August 8, 2005, stated as follows:

> On Friday night around 11:00 p.m., Wesley M. Grose came to our home (Sharon and Wesley Lilly) and insisted that I, Sharon Lilly, rewrite a letter he had written stating that James F. Lilly gave him $100,000 as a gift of friendship. Wesley Grose said the letter could not be in his own handwriting and he told me to rewrite it word-for-word. I did as he asked because I was afraid.
> On Saturday (8-6-2005), Wesley M. Grose again came to our house and said the first letter was not good enough. Wesley M. Grose had written a contract stating that James F. Lilly loaned Wesley M. Grose $100,000 to be paid back at $400 a month, etc. I rewrote the contract as he had written it because I was afraid.
> On several occasions Wesley M. Grose has said he could have someone killed while he sat on his couch and watched TV. About 2 or 3 months ago, Wesley M. Grose threatened me and my husband.
> We were afraid not to cooperate with Wesley M. Grose - we have 3 small children in our home. We have no telephone and no way to summons help. I have seen Wesley M. Grose with a pistol in the past - he always boasted about the gun collection he had and we did as he asked - because we did not know if he had any of the guns with him or not.

(Criminal Action No. 5:05-0261, Document No. 80, pp. 9 - 10, ¶ 33.) While trial counsel did not specifically challenge the obstruction enhancement at sentencing, he did file written objections to the enhancement as contained in the Presentence Investigation Report. In his objections to the Presentence Report, trail counsel noted that Movant admitted to having Mr. Lilly sign a document on August 8, 2005, indicating the $100,000 transaction was a loan, but denied making any threats. (Criminal Action No. 5:05-0261, Document No. 80-1, p. 2.) Trial counsel further noted in his

15

objections that Movant would be unable to bully anyone due to his significant medical problems. (Id.) During the sentencing, trial counsel further challenged the credibility of Mr. Lilly's testimony. (Id., Document No. 93-3, pp. 6 - 11.) Trial counsel presented the testimony of Ms. Fisher, who testified that Mr. Lilly attempted to bribe her not to press charges against his son. (Id.) Furthermore, trial counsel strongly argued that the obstruction of justice conduct should not be considered in determining whether Movant was entitled to a downward departure for his acceptance of responsibility. (Id., pp. 19 - 20.) Specifically, trial counsel argued that "the timing of the conduct involving the obstruction, the issue of Mr. Grose not being forthcoming with officers about the $100,000, why he got it, what it was for, and the involvement with the Lillys, all that took place on or about August 8, 2005. That's before this case became a federal case."[7] (Id.) Thus, Movant's conclusory claim that trial counsel was ineffective in failing to challenge the obstruction of justice enhancement is without merit. It is not enough to show that there was an omission or that counsel could have done more. Movant must show that this omission fell below the range of acceptable professional assistance. See Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. Based on the foregoing, the undersigned finds that counsel's representation did not fall below an objective standard of reasonableness.

---

[7] The District Court concluded Movant was not entitled to an adjustment for acceptance of responsibility based on the following (Document No. 93-4, p. 10.):

> The basis of the obstruction is primarily the defendant's efforts to approach certain witnesses in the investigation and provide - - have them sign letters in an effort to explain away the $100,000 payment made by them to him. While it is true that that occurred prior to this case becoming a federal prosecution, it did occur during the investigation of the case, and the fact that an explanation has never been given, at least not a logical explanation, has ever been given for this indicates to me that the obstruction is ongoing. The only explanation that's ever been given as to why this $100,000 payment was made to the defendant was that it was a gift of friendship, and I find that explanation not to be credible.

16

E.    *Trial Counsel's Failure to Allege Prosecutorial Misconduct.*

Movant contends that trial counsel acted ineffectively in failing to allege prosecutorial misconduct. (Civil No. 5:09-0305, Document No. 119, pp. 6 - 10.). Specifically, Movant contends that the Government knowingly presented false testimony by Mr. Lilly. (Id.) Movant contends that Government acted improperly in presenting Mr. Lilly as a witness based upon the following: (1) "Reviewing [Mr. Lilly's] medical records it was discovered that he and his wife received numerous pain medications from doctors and not as stated prior that Mr. Grose was the 'sole source' for obtaining pills;" (2) Mr. Lilly "lied to state agents that he quit taking pills after his wife's overdose in 2004, consequently though, he was caught with illegal narcotics April, 2005, while in the hospital;" (3) "Testimony at sentencing diminished Mr. Lilly with witness Rose Fisher where she testified that Mr. Lilly sought to bribe her for $1,500 to lie to and drop the robbery charges against Mr. Lilly's son, Wesley Lilly;" (4) "At sentencing Lilly testified that the only time he saw Mr. Grose with a gun, and that being a collector 'showpiece . . . one of a kind,' was during a social visit with zero pill exchange, despite the fact, Mr. Lilly's prior statements utilized in the PSR were unequivocally false;" and (5) "The Court found Mr. Lilly's credibility 'suspect.'" (Id., pp. 6 - 7.)

Based upon a review of the record, the undersigned finds that there is no evidence that the Government presented false or perjured testimony. A prosecutor's use of testimony that he knows, or should have known, to be false or perjured to obtain a conviction violates due process. See United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); United State v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 342 (1976). The mere existence of discrepancies or inconsistencies in testimony, however, does not establish that the prosecutor knowingly used false or perjured testimony. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987)(finding that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's

knowing use of false testimony"). In the instant case, Movant merely indicates discrepancies or inconsistencies in Mr. Lilly's testimony. Movant further argues that the Government conceded that Mr. Lilly "was a very serious drug abuser" and "he blamed Mr. Grose for his wife's drug overdose death."[8] The foregoing complaints, however, go to the credibility of Mr. Lilly as witness. Although the District Court acknowledged that Mr. Lilly's credibility was "suspect," the District Court did not determine Mr. Lilly's testimony to be false. The District Court stated as follows: "I do think that Mr. Lilly's credibility is suspect, but his testimony that the defendant had numerous firearms, and had seen some as indicated, is certainly supported by the fact that numerous firearms were found in the home when the search warrant was executed." (Criminal Action No. 5:05-0261, Document No. 93-4, p. 8.) The undersigned, therefore, finds that the Movant's claim that the Government engaged in misconduct by offering false testimony is without merit. Accordingly, trial counsel did not act ineffectively in failing to assert prosecutorial misconduct.

**F.    *Appellate Counsel's Failure to Allege Prosecutorial Misconduct.***

Movant alleges that appellate counsel acted ineffective in failing "to present issues of prosecutorial misconduct as well as informant false statements and perjury on appeal." (Civil No. 5:09-0305, Document No. 119, p. 10.) The undersigned has considered and found no merit in Movant's above claims of ineffective assistance of counsel. Thus, when no merit is found in a claim of ineffective assistance of trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995)("When defendant alleges his appellate counsel rendered ineffective assistance by failing to

---

[8]  Prior to presenting Mr. Lilly as a witness, the Government informed the Court that there were some inconsistency in his statements and "the Court will have to determine his credibility." (Criminal Action No. 5:05-0261, Document No. 93-1, pp. 6 - 8.)

raise an issue on appeal, we examine the merits of the omitted issue. * * * If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel."(Citation and quotation marks omitted.)) Furthermore, counsel is not required to raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983)(stating that no decision "of this Court suggests...that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."). The "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989)(quoting Smith v. Murray, 477 U.S. 527, 536, 106, S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). Therefore, Movant's claim of ineffective assistance of counsel on the above ground should be dismissed.

### PROPOSED FINDINGS AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document Nos. 109 and 119.) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28,

United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, Movant shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: December 19, 2011.

R. Clarke VanDervort
United States Magistrate Judge

20